IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 8:25-CR-3041 |
| Plaintiff, | |
| vs. | **BRIEF IN SUPPORT OF MOTION TO DISMISS WITH PREJUDICE** |
| ALEJANDRO ROBLES RODRIGUEZ, | |
| Defendant. | |

## I.   INTRODUCTION

The Defendant, Alejandro Robles Rodriguez, respectfully requests that this Honorable Court dismiss the above-captioned case against him—with prejudice—based upon the Government's decision to deport him while this case remained pending. As discussed in further detail below, the Defendant maintains that dismissal with prejudice is warranted because—by its own decision to proceed with deportation—the United States Government has infringed upon the Defendant's ability to exercise a myriad of constitutional and statutory rights. By expelling the Defendant from the country upon the threat of further criminal sanction if he were to re-enter, *see* 8 U.S.C. § 1326(a), any further action in this case or trial will inevitably run afoul of the Fifth and Sixth Amendments to the United States Constitution, as well as several federal statutes. Because Defendant's absence from this District is the result of actions taken by an Article II executive branch agency—not the Defendant's voluntary absenteeism—this Court should dismiss this case with prejudice.

1

## II.    FACTUAL BACKGROUND

### A. Case Overview

On May 19, 2025, the Grand Jury returned a two-count Indictment against the Defendant and his co-defendant. (Filing 1). Count I of the Indictment charges the Defendant with conspiracy to distribute and possess with intent to distribute 500 grams or more of a mixture or substance containing a detectable amount of cocaine and a mixture or substance containing a detectable amount of marihuana, in violation of 21 U.S.C. § 846. Count II of the Indictment alleges that the Defendant knowingly and intentionally possessed with intent to distribute 500 grams or more of a mixture or substance containing a detectable amount of cocaine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1). Count III of the Indictment alleges that the Defendant knowingly possessed a firearm or firearms in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A). (Filing 1).

### B. Case Progression

Defendant appeared before United States Magistrate Judge Jacqueline DeLuca for an initial appearance on May 23, 2025. (Filing 15). Following that initial appearance Judge DeLuca signed a Consular Notification document the same day. (Filing 24). This Consular Notification document advised Defendant that as a non-U.S. citizen who was being arrested or detained, he may request that his country's consular officers in the United States be notified as to his situation. The Defendant communicated that he did *not* want the Court to notify his country's consular officers.

Judge DeLuca also signed a Case Progression Order on May 23, 2025, following

Defendant's initial appearance. (Filing 19). Paragraph 8 of this Order states:

> **Defendant's Presence:** The defendant shall be present at all pretrial
> arguments or hearings unless the defendant's presence is excused by the
> court or the court scheduled the hearing with counsel only. A defendant's
> request to be absent from a hearing must be filed as least three business
> days prior to the hearing, and it must be supported by either the
> defendant's written declaration or affidavit stating that the defendant
> knowingly, intelligently and voluntarily gives up the right to attend the
> argument or hearing, or by counsel's statement that counsel has advised
> the defendant of the right to attend the argument or hearing, the
> defendant acknowledges understanding that right, and the defendant
> knowingly and voluntarily waives the right to attend.

(Filing 19 at 4).

A detention hearing was subsequently held on May 29, 2025. (Text Minute

Entry 36). Over the Defendant's objection, the Court granted the Government's

Motion for Detention. (Text Minute Entry 36).

## C. Defendant's Motion to Reconsider Detention for the Purposes of Obtaining Substance Abuse Treatment

A little over two months later, on August 6, 2025, the Defendant filed a Motion

seeking reconsideration on the issue of detention. (Filing 44). In this Motion, the

Defendant noted that he participated in a chemical dependency evaluation and that

the results of that recommendation were for the Defendant to engage in Level 3.5

Residential Chemical Dependency Treatment. (Filing 44). The Motion also noted that

the Defendant had been accepted for Short Term Residential Treatment with "The

Bridge Behavioral Health" in Lincoln, Nebraska. (Filing 44). At the time this Motion

was filed, the United States Probation Office Pretrial Division supported Defendant's

release to The Bridge, but the United States Attorneys' Office for the District of Nebraska did not.

On August 11, 2025, a hearing was held on Defendant's Motion to Reconsider Detention. (Text Minute Entry 50; Filing 51). Between the time that Defendant initially filed his Motion for Reconsideration of Detention and the date of the hearing on that Motion, the United States Probation Office's Pretrial Services Division changed its position on release to The Bridge based upon its realization that a detainer had been filed by the United States Office of Immigration and Customs Enforcement (ICE). During the August 11, 2025, hearing, counsel for the Defendant submitted that the Defendant's immigration status and ICE detainer were not relevant considerations for the Court in determining pretrial release. (Filing 51 at 8:49–9:00).

Judge DeLuca subsequently commented that based on the research she had conducted, one of the things she found was "spot on" with this position articulated by Defense Counsel. (Filing 51 at 11:00–11:08). Judge DeLuca then proceeded to cite the following cases in support of the proposition that just because a non-citizen is subject to a possible ICE detainer, and therefore may not be available for trial on release, this is not a valid basis for detention: (1) *United States v. Santos–Flores*, 794 F.3d 1088 (9th Cir. 2015); (2) *United States v. Ailon-Ailon*, 875 F.3d 1334 (10th Cir. 2017); and (3) *United States v. Urizar Lopez*, 587 F.Supp.3d 835 (S.D. Iowa 2022). Ultimately, Judge DeLuca decided to grant the Defendant's Motion to Reconsider Detention to allow the Defendant to obtain treatment at The Bridge based upon her

consideration of the relevant factors applicable to the Bail Reform Act. The Government did not appeal Judge DeLuca's release order in accordance with 18 U.S.C. § 3145 and this Court's Local Rules. *See* NECrim R. 46.2(c).

On August 21, 2025, counsel for Defendant filed a Notice of Treatment Bed Availability (Filing 55), consistent with Judge DeLuca's directive to do so. (Filing 52). In this Notice of Treatment Bed Availability, counsel for Defendant provided an acceptance letter from The Bridge stating that Defendant had been scheduled for an admission date of August 26, 2025 at 10:00 a.m. (Filing 55; Filing 55-1). Upon information and belief, agents with and/or acting on behalf of ICE picked up Defendant from his pretrial place of detention (the Saline, Nebraska County Jail), on or about the day he was scheduled to be released to attend treatment at The Bridge. Upon further information and belief, Defendant was then relocated to an ICE detention facility and was never admitted to The Bridge.

### D. Defendant's Apparent Deportation

Upon information and belief, at some point on or after August 26, 2025, Defendant was apparently deported and sent back to his native country of Mexico. On or about September 11, 2025, the undersigned communicated his understanding that the Defendant may have been deported to an officer assigned to the pretrial services division with the United States Probation Office for the District of Nebraska.

On or about September 12, 2025, a regularly scheduled pretrial status conference took place at 9:15 a.m. between the undersigned, counsel for the United States, and Judge DeLuca. During the status conference, the undersigned

communicated to Judge DeLuca and Assistant United States Attorney Christopher Harroun that he believed the Defendant had been deported and was no longer in the United States. It was communicated during this status conference that the United States Attorneys' Office for the District of Nebraska was unaware that ICE had deported the Defendant.[1] Following the pretrial status conference, Judge DeLuca granted Defendant's request for leave to extend the pretrial motions deadline to allow for the filing of a motion based upon Defendant's apparent deportation.

Since the pretrial status conference on September 12, 2025, the undersigned has continued to engage with the United States Probation Office to seek additional details regarding the Defendant's apparent deportation. The undersigned has likewise attempted to communicate with representatives for the United States Office of Immigration and Customs Enforcement. Thus far, the undersigned has been unable to obtain additional details regarding Defendant's apparent deportation. For this reason, a hearing is respectfully requested.

### III.   DISCUSSION

Based on the foregoing, counsel for the Defendant respectfully submits that Counts I, II, and III of the Indictment, the Forfeiture Allegation of the Indictment, and the Indictment, should be dismissed—as it pertains to this Defendant—with prejudice. Defendant offers the following bases why.

---

[1] Counsel for Defendant has no reason to believe that the United States Attorneys' Office was anything but fully truthful in this respect.

### A. Fifth Amendment Reasons to Grant the Motion

This Honorable Court should dismiss the Indictment with prejudice because it is appropriate, warranted, and necessary pursuant to the Fifth Amendment to the United States Constitution for the following reasons.

### 1. *The Due Process Right to Be Present at All Critical Stages*

The Fifth Amendment guarantees a criminal defendant the right to due process of law. Consistent with this right, the United States Supreme Court has explained that as a matter of due process, "a defendant is guaranteed the right to be present at any stage of the criminal proceeding that is critical to its outcome if his presence would contribute to the fairness of the procedure." *Kentucky v. Stincer*, 482 U.S. 730, 745 (1987); *see also United States v. Gagnon*, 470 U.S. 522, 526 (1985) ("The constitutional right to presence is rooted to a large extent in the Confrontation Clause of the Sixth Amendment . . . but we have recognized that this right is protected by the Due Process Clause in some situations where the defendant is not actually confronting witnesses or evidence against him") (internal citation omitted). Thus, as a matter of due process, a criminal defendant has "the right to be present at any proceeding 'whenever his presence has a relation, reasonably substantial, to the fulness of his opportunity to defend against the charge.'" *United States v. Moe*, 536 F.3d 825, 830 (8th Cir. 2008) (quoting *Gagnon*, 470 U.S. at 526). *See also* Fed. R. Crim. P. 43 (setting forth when a defendant is required to be present in a criminal case).

2. *The Fifth Amendment Right to Testify*

The Fifth Amendment also guarantees a criminal defendant the absolute right to testify in his defense at trial. *See Rock v. Arkansas*, 483 U.S. 44, 52 (1987) ("The opportunity to testify is also a necessary corollary to the Fifth Amendment's guarantee against compelled testimony."). While this right is also guaranteed by the Sixth Amendment, the Fifth Amendment protects it as well. No matter its source, the Defendant cannot exercise the right here as a result of his deportation effectuated by the United States Government.

## B. Sixth Amendment Reasons to Grant the Motion

This Honorable Court should likewise dismiss the Indictment with prejudice because it is appropriate, warranted, and necessary pursuant to the Sixth Amendment to the United States Constitution for the following reasons.

1. *The Sixth Amendment Right to Put on a Defense*

The Sixth Amendment guarantees a criminal defendant the right to put on a defense, which necessarily includes the ability to testify in his own defense. *See Rock*, 483 U.S. at 52 ("A defendant's opportunity to conduct his own defense by calling witnesses is incomplete if he may not present himself as a witness."); *Faretta v. California*, 422 U.S. 806, 819 (1975) ("The Sixth Amendment does not provide merely that a defense shall be made for the accused; it grants to the accused personally the right to make his defense"). The Defendant cannot exercise this right here as a result of his deportation effectuated by the United States Government. *See also United States v. Valenzuela Bernal*, 458 U.S. 858, 873 (1982) ("Sanctions may be imposed on

the Government for deporting witnesses only if the criminal defendant makes a plausible showing that the testimony of the deported witnesses would have been material and favorable to his defense, in ways not merely cumulative to the testimony of available witnesses"); *id.* at 874–875 ("As in other cases concerning the loss of material evidence, sanctions will be warranted for deportation of alien witnesses only if there is a reasonable likelihood that the testimony could have affected the judgment of the trier of fact").

2. *The Sixth Amendment Right to Confront Witnesses*

The Sixth Amendment guarantees a criminal defendant the right to confront the witnesses against him. Outside of a narrow subset of cases not applicable here, this right has generally been interpreted to mean that "the Confrontation Clause guarantees the defendant a face-to-face meeting with witnesses appearing before the trier of fact." *Coy v. Iowa*, 487 U.S. 1012, 1016 (1988). Obviously, the Defendant cannot exercise this face-to-face right of confrontation from an altogether different country over a thousand miles away from the District of Nebraska.

3. *The Sixth Amendment Right to Communicate with Counsel*

The Sixth Amendment guarantees a criminal defendant the right to the effective assistance of counsel. Part and parcel of this right is the ability for a criminal defendant and his counsel to meaningfully communicate with one another. *Cf. Geders v. United States*, 425 U.S. 80, 91 (1976) (holding "that an order preventing [the defendant] from consulting his counsel 'about anything' during a 17-hour overnight recess between his direct and cross-examination impinged upon his right to the

assistance of counsel guaranteed by the Sixth Amendment."). Although the Government has not cutoff counsel's ability to consult with the Defendant *per se*, deporting the Defendant to another country has had the practical effect of doing so.

    *4.  The Sixth Amendment Right to a Speedy Trial*

The Sixth Amendment guarantees a criminal defendant the right to a speedy trial. *United States v. Ewell*, 383 U.S. 116, 120 (1966). Although not implicated *yet* as of the filing of this Motion, the looming speedy trial issue on the horizon in this case is nevertheless worthy of consideration because it will inevitably become ripe if trial cannot proceed due to the Defendant's government-facilitated absence from the United States. Indeed, and while distinct from the Sixth Amendment's speedy trial guarantee, "[t]he [Speedy Trial] Act generally requires a federal criminal trial to begin within 70 days after a defendant is charged or makes an initial appearance." *United States v. Harris–Franklin*, 146 F.4th 631, 637 (8th Cir. 2025) (quoting *Zedner v. United States*, 547 U.S. 489, 492 (2006) (in turn citing 18 U.S.C. § 3161(c)(1)).

**C. Dismissal with Prejudice is Appropriate Because this Motion is Not Being Brought by the Government Pursuant to Fed. R. Crim. P. 48(a).**

While Defendant respectfully posits that dismissal with prejudice is appropriate given that the Government's own actions brought about this situation, some courts have considered similar situations and determined that dismissal without prejudice was the appropriate remedy. *However*, those cases generally came about on the *Government's* motion to dismiss pursuant to Fed. R. Crim. P. 48(a). This Motion is being brought by the Defendant and, at least as of the time Defendant's

Motion to Dismiss has been filed, the Government has not sought to dismiss the Indictment pursuant to Rule 48(a).

In *United States v. Alvarado–Velasquez*, 322 F.Supp.3d 857, 859 (2018), for example, Chief Judge Crenshaw of the United States District Court for the Middle District of Tennessee considered a situation in which the defendant was deported while criminal charges remained pending. As he put it, "With [the defendant] no longer in the country and outside this Court's jurisdiction, the only remaining question is whether dismissal or the Indictment should be with or without prejudice." *Id.* Chief Judge Crenshaw ultimately determined that dismissal without prejudice was warranted, but he made this determination in the context of ruling on *the Government's* Motion to Dismiss pursuant to Fed. R. Crim. P. 48(a). *See Alvarado-Velasquez*, 322 F.Supp.3d at 859. The posture and basis of the Motion was of key importance to Judge Crenshaw's conclusion because, as he reiterated, "a district court is 'duty bound' to grant the government's Rule 48(a) motion to dismiss an indictment without prejudice unless it specifically determines that the government is operating in bad faith in pursuing the motion." *Id.* at 860 (cleaned up). Nevertheless, Judge Crenshaw made a point of chiding the Government for what happened in this case, making clear that because "the Government has now been placed on notice, [his] ruling may be quite different should the same circumstances arise again in the future." *Id.*

Likewise, in *United States v. Rojas*, No. 18-10048-01-JWB, 2018 WL 6696570, at *1 (D. Kan. Dec. 19, 2018), Judge Broomes of the United States District Court for

11

the District of Kansas considered a situation where a defendant was deported to Mexico while his criminal charges remained pending. Relying on Judge Crenshaw's Order in *Alvarado–Velasquez*, Judge Broomes concluded that dismissal without prejudice was appropriate where the Government sought dismissal pursuant to Fed. R. Crim. P. 48(a) and "nothing in the record lends itself to a conclusion that dismissal of the indictment constitutes an effort to harass Defendant or that the dismissal is otherwise 'tainted with impropriety.'" *Id.* at *3.[2]

As noted above, what distinguishes the present case is that the Government has not sought dismissal of the case pursuant to Fed. R. Crim. P. 48(a). This Motion has been filed by the Defendant based upon many constitutional safeguards that cannot be maintained in this case going forward through no fault of the Defendant. Moreover, by deporting Defendant while his criminal charges remained pending, the Government—through its own actions—has made it so that Defendant cannot attend his own trial without violating federal law because his trial must take place in the District of Nebraska. *See* U.S. Const. art. III, § 2; U.S. Const. amend. VI. In Order for Defendant to attend his own trial, he would necessarily have re-enter this county after having previously been deported, in violation of 8 U.S.C. §1326(a)—thereby subjecting him to increased punitive exposure above and beyond that which he already faces. Given this posture, dismissal with prejudice is appropriate.

---

[2] Judge Melgren, also of the Federal District Court of Kansas, reached the same basic conclusion in *United States v. Rodriguez Romo*, No. 18-10146-EFM, 2019 WL 1058199, at *3 (D. Kan. Mar. 6, 2019)—another case where the Government sought dismissal pursuant to Fed. R. Crim. P. 48(a).

Very respectfully submitted,

 *s/Ryan S. Crnkovich*
Ryan S. Crnkovich, NE Bar #25741
Dornan, Howard, Breitkreutz, Dahlquist &
Klein, PC, LLO
1403 Farnam Street, Suite 232
Omaha, NE 68102
(402) 884-7044
(402) 884-7045 facsimile
ryan@dltlawyers.com
*Attorney for Defendant*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 18th day of September, 2025 a true and correct copy of the foregoing pleading and was electronically filed with the Clerk of the United States Court for the District of Nebraska using the CM/ECF filing system which sent notification of such filing to the following recipients:

Christopher Harroun
Assistant U.S. Attorney
100 Centennial Mall North Suite 487
Federal Building
Lincoln, NE 68508
christopher.harroun@doj.gov

*/s/ Ryan S. Crnkovich*
Ryan S. Crnkovich, NE Bar #25741
Attorney for Defendant
